## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY BRUNNER, )
)
    Petitioner, )
)
    v. )
)
SUPERINTENDENT MICHAEL CLARK, )
THE ATTORNEY GENERAL OF THE )
STATE OF PENNSYLVANIA, and THE )
DISTRICT ATTORNEY FOR ALLEGHENY )
COUNTY, )
)
    Respondents. )

Civil Action No. 16-766
Magistrate Judge Maureen P. Kelly

## **OPINION AND ORDER**

Timothy Brunner ("Petitioner" or "Brunner") has filed this pro se Petition Under 28

U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No.

3, challenging his state court convictions for second degree murder, abuse of a corpse and

conspiracy. Petitioner was sentenced to life in prison without parole for second degree murder

and consecutive periods of 4 to 8 years for kidnapping (which 4 to 8-year sentence was

eventually vacated), 1 to 2 years for abuse of a corpse and 4 to 8 years for criminal conspiracy.

Because none of the three Grounds for Relief raised in the Petition merits relief, the

instant Petition will be dismissed. Furthermore, because jurists of reason would not disagree

with the disposition of this case, a certificate of appealability will be denied.

### I. FACTUAL BACKGROUND

The Pennsylvania Superior Court summarized the factual history of the case in its

Memorandum opinion, dated January 18, 2013, as follows:

In the early summer of 2009 Amy Kucsmas (victim) was actively involved in daily drug seeking behavior in the Mt. Oliver and Carrick sections of Allegheny County. (T.T. 206-208, 223, 245-245)[6] In late June or early July Kucsmas spent several days in the apartment of Timothy Brunner. (T.T. 283, 384-385, 738, 813-816) Brunner's residence was apartment number two (2) of a four (4) unit building located in Mt. Oliver, and at that time he was residing there with his girlfriend, Ceira Brown. (T.T. 280-281) Kristopher Benjamin was a friend and former co-worker of Brunner and lived in that same apartment building - apartment number four (4), which was located above Brunner's apartment. (T.T. 281-282, 679, 774-775, 809) Shortly after Kucsmas began staying at Brunner's apartment she "disappeared", taking approximately $200 of Brunner's money as well as his photo identification card (ID). (T.T. 282, 385-386, 818)

[6] "T.T." refers to the trial transcript of April 4-14, 2010 which is comprised of two (2) volumes.

In the evening of July 11, 2009 Brunner, Benjamin and Brown went to the Hazelwood section of the City of Pittsburgh. In the early morning hours of July 12th they were returning to their Mt. Oliver apartment building when Benjamin saw Kucsmas walking along Brownsville Road in the Carrick section of the city. (T.T. 287, 342) They were traveling in a pick-up truck driven by Benjamin that belonged to a neighbor James House. (T.T. 285) Upon observing Kucsmas, Benjamin stated, "Fucking Amy", and pulled the truck over. (T.T. 287, 343) Brunner and Benjamin got out of the truck and both men angrily confronted Kucsmas about the stolen money and ID. Kucsmas denied taking the money and eventually became so frightened during the confrontation that she urinated on herself. (T.T. 209-216, 287-292, 387) Brunner took Kucsmas' purse and searched through it until he found the ID that had been stolen. (T.T. 213, 290, 347, 387-388)

Once Brunner discovered his ID, he and Benjamin told Kucsmas that she was going with them, and they began pulling her toward the truck. (T.T. 214) Kucsmas initially resisted, but Brunner assured her that everything would be okay and that she should come home with them; Kucsmas ceased her resistance and got into the truck, followed by Brunner and Benjamin. (T.T. 214, 291)

Benjamin drove to an isolated and hilly area of a nearby park where Kucsmas was ordered out of the truck. (T.T. 294, 394) Brunner and Benjamin again angrily confronted Kucsmas about the money and repayment, threatening to throw her over the hill. (T.T. 295-296, 397-401) Kucsmas was scared and crying, assuring the men that she would pay the money back. (T.T. 296-297) Kucsmas was ordered back into the truck whereupon they drove back to their apartment building. (T.T. 298-299)

Once there Brown was ordered by Brunner to take Kucsmas by the hand to prevent her from fleeing, and Kucsmas was escorted to Brunner's apartment by Brunner, Benjamin, and Brown. (T.T. 301) Once in the living room, Benjamin

2

began yelling at Kucsmas about the money and made her take off her clothes whereupon he retrieved $60 from her "private area", which in turn was given to Brunner. (T.T. 413, 425-427) Brunner, now armed with a handgun, and Benjamin begin [sic] to beat and yell at Kucsmas. (T.T. 304, 415, 845-849) During this time Brunner cocked the weapon and fired a shot into the floor of the apartment. (T.T. 304, 415) Brown retreated to her bedroom, but heard Brunner and Benjamin continue the beating, as well as Kucsmas pleading with the two men to stop. (T.T. 306, 845-848)

Eventually the beating stopped and Kucsmas was ordered to go to the bathroom and shower. (T.T. 307, 849) While Kucsmas was in the bathroom Brunner and Benjamin had a discussion regarding the serious nature of the injuries they had inflicted on her, and they came to an agreement that she could not leave the apartment because of that. (T.T. 310, 418, 852)

When Kucsmas finished showering Brown witnessed Brunner go into the bathroom and help Kucsmas out of the shower. (T.T. 311) As Kucsmas began to walk out of the bathroom Brown saw Brunner put his arm around her neck from behind, and Benjamin approach her from the front. (T.T. 311, 327, 855) Brown then put her head under the covers of her bed, but she heard Kucsmas struggling and gasping for air. (T.T. 311) Kucsmas was punched in the head, which knocked her to the bathroom floor. As she lay there her chest was stomped on, and bloody foam oozed out of her mouth and nose. (T.T. 855) When the struggling and gasping stopped, Brown heard Brunner remark to Benjamin, "she fought hard". (T.T. 311, 368) Brown took her head out from under the covers and saw Kucsmas laying motionless on the bathroom floor with Brunner and Benjamin standing around her (T.T. 312) Brunner and Benjamin picked Kucsmas up and laid her on the floor in front of Brown's bed. (T.T. 313) Brown was ordered to go outside and make certain that no one was around. (T.T. 313)

Brunner went to the basement of the building and returned with a roll of carpet. (T.T. 558-560, 857-862) Brunner and Benjamin rolled Kucsmas['] body in the carpet and placed her in the back of the pick-up truck. (T.T. 865-868) At Benjamin's suggestion they then drove to Hunter Park in Wilkinsburg Borough where the body was left in a weeded/wooded area. (T.T. 868) Benjamin was familiar with this area because he grew up nearby.

When Brunner returned to his apartment he awakened Brown and told her that they had left Kucsmas behind a dumpster, and he planned to go back and burn the body. (T.T. 317, 319) Brown was instructed to clean up some blood spots on the living room carpet, as well as some pieces of cut carpet that Kucsmas' body had been wrapped in. (T.T. 317-318, 419-420) Brunner instructed Brown that if she were ever questioned by the police, that she was to acknowledge the confrontation with Kucsmas on the street and the return with her to the apartment building, but to inform the police that upon their return they

went their separate ways and Kucsmas never went into Brunner's apartment. (T.T. 324)

On July 23, 2009 a tree cutting crew was dumping wood chips at Hunter Park, when they discovered the carpet and partially decomposed body of Amy Kucsmas dumped by Brunner and Benjamin eleven (11) days earlier. (T.T. 71-73, 89, 96)

The medical examiner was not able to determine the exact cause of death due to the advanced stage of decomposition, however there were multiple areas of blunt force trauma to the body including broken ribs and head trauma. (T.T. 140-142) Given all the circumstances presented, including the trauma to the body and where and how the body was found, the pathologist concluded that the manner of death was homicide. (T.T. 141-146, 167)

Com. v. Brunner, No. 1452 WDA 2010, 2013 WL 11289521, at *1 - *3 (Pa. Super. Jan. 18, 2013) (quoting trial court opinion); ECF No. 14-6 at 1 – 4.

## II. PROCEDURAL HISTORY

### A. State Court Procedural History

The Pennsylvania Superior Court, adopting as its own the opinion of the Post Conviction Relief Act ("PCRA") trial court, summarized the state court procedural history as follows:

Appellant, Timothy Brunner, was charged by criminal information (CC 200913465) with one count of criminal homicide, one count of kidnapping, one count of abuse of corpse, and one count of criminal conspiracy.

Appellant proceeded to a jury trial on April 4, 2010, with codefendant Kristopher Benjamin, at the conclusion of which Appellant was found guilty of second degree murder, kidnapping, abuse of corpse, and criminal conspiracy.

On July 7, 2010, Appellant was sentenced by the Trial Court as follows:

Count one: second degree murder—life imprisonment without the possibility of parole;

Count two: kidnapping—four to eight years incarceration to be served consecutive to the period of incarceration imposed at count one;

Count three: abuse of corpse—one to two years incarceration to be served consecutive to the period of incarceration imposed at count two;

Count four: criminal conspiracy—four to eight years incarceration to be served consecutive to the period of incarceration imposed at count three.

Appellant filed a post sentence motion on July 13, 2010, which was denied by the Trial Court on August 20, 2010. Appellant filed a timely notice of appeal on September 17, 2010.[1]

[1 The issues that Petitioner raised in the Direct Appeal Brief were as follows:

I. Did the court err in denying the Motion to Sever the cases of alleged co-conspirators Timothy Brunner and Kristopher Benjamin?...
II. Did the court abuse its discretion in finding that verdicts of guilty of Second Degree Murder and Kidnapping were not contrary to the weight of the evidence....
III. Did the court impose an illegal sentence for the count of Kidnapping insofar as this offense merged with the Second Degree Murder conviction for sentencing purposes?

ECF No. 14-3 at 11.]

On January 18, 2013, the Superior Court vacated Appellant's judgment of sentence and remanded to the Trial Court for resentencing as counts one and two merged. Appellant filed a Petition for Allowance of Appeal to the Supreme Court on February 15, 2013, which was denied on July 17, 2013. On September 5, 2013, Appellant was resentenced by the Trial Court as follows:

Count one: second degree murder—life imprisonment without the possibility of parole;

Count two: kidnapping—merged with count one;

Count three: abuse of corpse—one to two years incarceration to be served consecutive to the period of incarceration imposed at count one;

Count four: criminal conspiracy—four to eight years incarceration to be served consecutive to the period of incarceration imposed at count three.

On October 25, 2013, Appellant filed a *pro se* PCRA petition. The Trial Court appointed counsel on October 29, 2013, and appointed counsel filed a motion to withdraw pursuant to *Turner–Finely* [sic] on January 28, 2014, [sic] On

January 30, 2014, the Trial Court granted counsel's motion to withdraw and filed its notice of intent to dismiss for the reasons stated in counsel's *Turner–Finley* letter.

Com. v. Brunner, 663 WDA 2014, 2015 WL 6394439, at *1–2 (Pa. Super. Jan. 30, 2015) (some footnotes omitted).

Thereafter, the PCRA trial court issued a Notice of Intent to Dismiss pursuant to Pa. R. Crim. P. 907 ("Rule 907 Notice of Intent"), which notified Petitioner that he had the right to "1) obtain private retained counsel in order to pursue the post-conviction petition; 2) proceed without counsel by notifying this Court of the reasons why this petition should not be dismissed; or, 3) withdraw the post-conviction petition with prejudice." ECF No. 15-1 at 30. Petitioner did not file a response to the Rule 907 Notice of Intent. However, Petitioner did file a pro se notice of appeal after the PCRA trial court dismissed the PCRA petition. Id. at 33. The PCRA trial court then appointed Attorney Suzanne Swan to represent Petitioner for purposes of appealing to the Pennsylvania Superior Court. Petitioner, through Attorney Swan, filed a Statement of Errors Complained of on Appeal, id. at 37 – 39, wherein she raised the following two issues:

> A. The lower court abused its discretion in finding no merit to the claims raised in the PCRA petition, and denying the petition alleging trial counsel's ineffectiveness without a hearing, where the witnesses Mr. Brunner sought to present at his trial, but whom counsel failed to contact, interview and call to the stand, would have given testimony that would have raised a reasonable doubt as to Mr. Brunner's culpability, particularly as to the degree of homicide charged.

> B. The lower court abused its discretion in finding no merit to the claims raised in the PCRA petition, and denying the petition alleging trial counsel's ineffectiveness without a hearing, insofar as Mr. Brunner claimed in his petition that his waiver of his right to call character witnesses was involuntary and unintelligent because counsel failed to contact, interview and prepare the character witnesses Mr. Brunner identified to counsel as being willing to testify on his behalf.

Id. at 39.

The Superior Court on appeal in the PCRA proceedings noted that Petitioner therein had raised only one issue before that Court in the appellate brief which Attorney Swan filed with the Superior Court (as opposed to the Statement of Errors Complained of on Appeal which Attorney Swan had filed in the PCRA trial court, wherein two issues were raised). The sole issue that Attorney Swan raised in the appellate brief to the Superior Court was as follows:

> DID THE LOWER COURT ABUSE ITS DISCRETION IN DISMISSING THE PCRA PETITION WITHOUT A HEARING AND ALLOWING COUNSEL LEAVE TO WITHDRAW, INSOFAR AS PETITIONER AVERRED THAT HIS WAIVER OF HIS RIGHT TO CALL CHARACTER WITNESSES WAS INVOLUNTARY AND UNKNOWING BECAUSE TRIAL COUNSEL WAS INEFFCTIVE FOR FAILING TO CONTACT, INTERVIEW AND PREPARE THE CHARACTER WITNESSES THAT PETITIONER IDENTIFIED AS BEING WILLING TO TESTIFY ON HIS BEHALF.

ECF No. 15-3 at 8; Com v. Brunner, 2015 WL 6394439 at *1. Upon review of the record, the Superior Court affirmed the denial of PCRA relief. Id. Thereafter, Petitioner, through Attorney Swan, filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, ECF No. 15-6 at 1 – 32, which was denied on August 31, 2015. ECF No. 15-8 at 2.

**B. Federal Court Procedural History**

Proceeding pro se and in forma pauperis, ECF No. 2, Petitioner initiated this action by completing the pre-printed Section 2254 habeas petition form. ECF No. 3. In the Petition, he raised the following grounds for relief:

> **GROUND ONE:** The Petitioners [sic] 14th Amendment rights were violated at trial where the evidence was insufficient to sustain a verdict of guilty beyond a reasonable doubt for the charges of kidnapping and 2nd degree murder.

ECF No. 3-1 at 2.

**GROUND TWO:** The Petitioners [sic] 6th and 14th Amendment rights were violated at trial where the case was not severed from the alleged co-conspirators [sic] case.

Id. at 2 – 3.

**GROUND THREE:** The Petitioners [sic] 6th and 14th Amendment rights were violated through discovery when the D.A. failed to present to the defense a key police report.

Id. at 3.

After being granted an extension of time, Respondents filed the Commonwealth's Answer to the Petition for Writ of Habeas Corpus, ECF No. 13, with appendices of copies of much of the state court record. ECF Nos. 14 – 15. Respondents assert that Petitioner is not entitled to relief and specifically argue that all three grounds for relief were procedurally defaulted. Respondents also caused the original state court record without the physical exhibits to be transmitted to the Clerk's Office. Petitioner then filed a Traverse. ECF No. 19.

All parties have consented to have the United States Magistrate Judge exercise plenary jurisdiction. ECF Nos. 9 and 16.

## III.  APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides

the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## IV. DISCUSSION

### A. Ground One Does Not Merit Relief.

#### 1. Petitioner procedurally defaulted Ground One.

In Ground One, Petitioner raises the issue that there was insufficient evidence to support his conviction for kidnapping and, consequently, for second degree murder, i.e., a murder committed concomitantly with a felony, which was the kidnapping. Respondents correctly point out that Petitioner procedurally defaulted Ground One because he never raised this issue in the state courts.

##### a. The procedural default doctrine

The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule

9

and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes). The United States Court of Appeals for the Third Circuit has explained that the "doctrine of procedural default in effect makes compliance with all relevant state-law procedural rules a precondition to federal habeas relief." Hull v. Freeman, 932 F.2d 159, 165 (3d Cir. 1991), *overruled on other grounds by*, Caswell v. Ryan, 953 F.2d 853 (3d Cir. 1992). See Smith v. Horn, 120 F.3d 400, 408 (3d Cir. 1997).

There are two exceptions to the procedural default doctrine. The first exception provides that a federal legal issue that was not properly raised in the state courts and, therefore, procedurally defaulted, may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice stemming from, the procedural default. Wainwright v. Sykes, 433 U.S. at 90 - 91. In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' *Murray v. Carrier*, 477 U.S. 478, 488 (1986)." Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and

10

substantial disadvantage . . . . This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" Werts v. Vaughn, 228 F.3d at 193 (citations and some internal quotations omitted). The second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice." In Werts, the United States Court of Appeals for the Third Circuit explained this exception as follows:

> [I]f the petitioner fails to demonstrate cause and prejudice for the default, the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice." Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [*Murray v. Carrier*, 477 U.S. 478] at 496 [(1986)]. Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 326 (1995).

Id.

Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law. See, e.g., Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995) (requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from considering the merits and, therefore, constituted a procedural default for federal habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998).

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally

11

defaulted claim with prejudice.  See, e.g., Perry v. Diguglielmo, CIV.A. 06-1560, 2008 WL 564981, at *12 (W.D. Pa. Feb. 29, 2008).

### b. Petitioner never raised a sufficiency of the evidence claim.

Upon review, it appears that Petitioner raised in the state courts, on direct appeal, a claim that the jury's verdict of guilty for the kidnapping and, consequently, for the second degree murder charge, was against the weight of the evidence.  Respondents point out that the claim which Petitioner raises herein is that the evidence was insufficient to support the finding of guilt for the kidnapping.  As Respondents point out, a claim of insufficient evidence and a claim concerning the weight of the evidence are separate and distinct legal claims and raising one does not raise the other.  Respondents are correct.

"Weight of the evidence claims are distinct from sufficiency of the evidence[.]" Whichard v. McGrady, CIV.A.08-1642, 2008 WL 4916279, at *4 (E.D. Pa. Nov. 14, 2008).  The United States Court of Appeals for the Third Circuit has explained that "under Pennsylvania law, a sufficiency challenge and a weight challenge are 'discrete inquiries.' *Commonwealth v. Whiteman*, 336 Pa. Super. 120, 485 A.2d 459, 461 (1984) (internal quotation marks omitted). 'A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner [as it would be in a sufficiency challenge].' *Widmer*, 744 A.2d at 751 (internal citations omitted)." Carnevale v. Superintendent Albion SCI, 654 F. App'x. 542, 548 (3d Cir. 2016).  Indeed, it has been pointed out that a "sufficiency of the evidence" claim is a federal constitutional claim under the Fourteenth Amendment.  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (it violates substantive due process to be convicted of a crime where there is not sufficient evidence to

support every element of the crime). However, a claim that the verdict is against the weight of the evidence, raises solely a state law claim and, as such, is not a claim that is even cognizable in federal habeas proceedings. McKinnon v. Superintendent, Great Meadow Correctional Facility, 422 F. App'x 69, 75 (2d Cir. 2011) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985)("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence"); Davis v. Lavan, NO. CIV.03-40211, 2004 WL 2166283, at *9 (E.D. Pa. Sept. 23, 2004)("a claim that a verdict is against the weight of the evidence is not cognizable on habeas review because it requires an assessment of the credibility of the evidence presented at trial, and a state court's credibility determinations are binding on a federal habeas court.").

Accordingly, Petitioner, having raised a weight of the evidence claim in the state courts but not a sufficiency of the evidence claim in the state courts, he may not now bring in this federal habeas proceeding in the first instance a sufficiency of the evidence claim because he has procedurally defaulted the sufficiency of the evidence claim in state court by never presenting such a claim. See, e.g., Clemons v. Harlow, CIV.A. 11-3452, 2011 WL 8476653 (E.D. Pa. Sept. 15, 2011), *report and recommendation approved*, CIV.A. 11-3452, 2012 WL 3104393 (E.D. Pa. July 30, 2012).

The United States District Court for the Eastern District of Pennsylvania in Clemons explained:

> On direct appeal, Petitioner fashioned this claim as a challenge to the sufficiency of the evidence. *See* Resp. Exhibit B, at 7. However, the argument presented was that the verdict was contrary to the weight of the evidence, which, he admitted, concedes evidentiary sufficiency. *Id.* The Superior Court, aware of this discrepancy, 2006 Super. Ct. Op. at 10–11, deemed the weight of the

13

evidence claim waived, since it was not included in the statement of matters complained of on appeal as required by Pa. R.App. P.1925(b), as well as for not having been raised in post-verdict or post-sentence motions as required by Pa. R.Crim. P. 607. Based on this history, Petitioner has not properly exhausted his sufficiency claim on direct appeal.[17] Further, he did not raise a sufficiency claim on PCRA appeal and can no longer do so because of the expiration of the PCRA statute of limitations, *see supra* Section II(C)(2); thus, claim eight is procedurally defaulted. *Keller,* 251 F.3d at 415. No justification for relief from default has been supplied. Accordingly, claim eight cannot be reviewed on its merits.

> [17] The United States Supreme Court has explained that a weight of the evidence claim is distinct from an evidentiary sufficiency claim. *Tibbs v. Florida,* 457 U.S. 31, 42–43, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The fundamental difference is that a weight claim concedes that there is evidentiary sufficiency. *Id.*

Clemson, 2011 WL 8476653 at *8. Accord Cottle v. Luther, CV 17-4725, 2018 WL 6534806, at

*2 (E.D. Pa. Oct. 12, 2018) ("Although Cottle argued that the evidence was insufficient to

support his aggravated assault conviction before the trial court, he failed to raise this claim to the

Superior Court. Instead, on appeal, Cottle raised only a weight of the evidence claim, which is

separate from a due process/sufficiency claim, and involves a challenge to the trial court's

credibility determinations. . . . Cottle, therefore, never 'fairly presented' his due

process/sufficiency claim at all levels of the state court. Further, because Cottle no longer has the

right to bring a due process/sufficiency claim before the state court based on adequate and

independent state procedural rules, this claim is procedurally defaulted."), *report and*

*recommendation adopted*, CV 17-4725, 2018 WL 6524253 (E.D. Pa. Dec. 12, 2018) (some

citations omitted); Floyd v. Patterson, 3:10CV922-TMH, 2012 WL 7746760, at *6 (M.D. Ala.

Dec. 4, 2012) ("As with Floyd's other claims raised on direct appeal, Floyd did not properly

exhaust this claim [of sufficiency of the evidence] in the state courts, and any attempt to exhaust

the claim in state court would now be barred. Moreover, the state appellate court correctly

applied a procedural bar principle of state law when it ruled that Floyd had failed to preserve his

14

sufficiency-of-the-evidence claim for appellate review because the arguments presented in his

appellate brief addressed the weight of the evidence, and not its legal sufficiency, and because

Floyd violated Ala.R.App.P. 28(a)(10) by failing to cite to legal authority and relevant portions

of the record in arguing this issue on appeal. Floyd does not establish 'cause and prejudice' or

'actual innocence' to excuse his procedural default. Accordingly, this claim is procedurally

defaulted for purposes of federal habeas review.") (footnote and some citations omitted), *report

and recommendation adopted*, 3:10CV922-TMH, 2013 WL 1080477 (M.D. Ala. Feb. 26, 2013).

Therefore, in the instant case, Petitioner has procedurally defaulted his claim in Ground

One of insufficient evidence and it may not form the basis for habeas relief unless Petitioner can

establish cause and prejudice or actual innocence. We will now address the two possible

exceptions to procedural default.

## 2. Neither exception to procedural default is applicable.

### a. Petitioner does not establish cause and prejudice.

In his Traverse, Petitioner seems to argue that he has "cause" to excuse the procedural

default of the claim of insufficient evidence in the form of a claim that his PCRA trial-level

counsel was ineffective in failing to raise the ineffectiveness of Petitioner's criminal-trial counsel

and direct appeal counsel for their failing to challenge the sufficiency of the evidence. ECF No.

19 at 4 – 5 ("The fact that my attorneys, both the direct appeal attorney by his refusal on page

302 [i.e., ECF No. 15-1 at 21] and my P.C.R.A. attorney for ignoring my issue on page 291 [i.e.,

ECF No. 15-1 at 10] did not present my issue [of insufficient evidence] to the State Courts makes

them ineffective[.]"). We take this assertion by Petitioner to be an invocation of the equitable

exception rule to procedural default first announced in Martinez v. Ryan, 566 U.S. 1 (2012).

As this Court has previously explained:

> The decision of the United States Supreme Court in *Martinez v. Ryan* created a sea change in the doctrine of procedural default, holding for the first time that a claim of ineffective assistance of post-conviction relief counsel could serve as cause to excuse the procedural default of a claim of trial counsel's ineffectiveness. However, the Supreme Court in *Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) explained that Martinez only permits a federal habeas court to find "cause" based on post conviction counsel's ineffectiveness and "thereby excus[e] a defendant's procedural default, where (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law requires that an 'ineffective assistance of trial counsel' [claim] ... be raised in an initial-review collateral proceeding."

Taylor v. Pennsylvania, CIV. A. 15-1532, 2018 WL 446669, at *9 (W.D. Pa. Jan. 16, 2018).

We are not persuaded that Petitioner can bring himself within the rule of Martinez, because he failed to raise in the state courts the claim of ineffective assistance of his PCRA trial-level counsel (for failing to raise the ineffectiveness of his trial/appeal counsel in not challenging the sufficiency of the evidence) as he is clearly required to do under the rule of Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

The rule of Edwards, requires that an ineffective assistance of counsel claim, which a habeas petitioner seeks to use as "cause" to excuse a procedural default, must have itself been raised in the state courts and not procedurally defaulted. In Edwards, a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. However, he never raised this ineffective assistance claim in state court, and it was held that he was procedurally barred from raising that claim. The United States Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for

16

cause to excuse his procedural default of the underlying claim. Id. at 451-53. In other words, even if Martinez could be said to permit the ineffective assistance of PCRA counsel to serve as "cause" to excuse the failure of PCRA counsel to raise trial counsel's ineffectiveness for not raising an insufficient evidence challenge at trial, we find that Petitioner has not properly presented his claim of "cause" in the state courts such that this federal habeas Court may consider such "cause" in the first instance. See, e.g., id. at 453 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted [although] that procedural default may ... itself be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to that claim."). In this respect, we note that Martinez, while overruling/modifying Coleman v. Thompson, 501 U.S 722 (1991) to the extent that Coleman held that ineffective assistance of counsel at the PCRA level could not serve as cause, did not overrule Edwards, and, indeed did not even address the holding announced in Edwards. This is so notwithstanding that the Martinez opinions even cited to Edwards.[1]

Accordingly, pursuant to the rule of Edwards v. Carpenter, we find that Petitioner procedurally defaulted his claim of cause in the form of the failure of PCRA trial-level counsel to

---

[1] The majority opinion in Martinez mentioned Edwards once: "Effective trial counsel preserves claims to be considered on appeal, *see, e.g.,* Fed. Rule Crim. Proc. 52(b), and in federal habeas proceedings, Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000)." Martinez v. Ryan, 566 U.S. at 12.

Justice Scalia in his dissenting opinion mentioned Edwards once: "Noticeably absent from the Court's equitable analysis, moreover, is any consideration of the very reason for a procedural-default rule: the comity and respect that federal courts must accord state-court judgments. *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000)." Id. at 26 (Scalia, J., dissenting).

Noticeably absent in either the majority opinion or the dissenting opinion is even the slightest suggestion that Martinez was overruling, *sub silentio* or otherwise, the rule in Edwards, that a claim of cause must not itself have been procedurally defaulted.

17

have raised the claim of trial counsel's ineffectiveness in failing to challenge the sufficiency of the evidence as we now explain.

In addition, we note briefly the procedural history of Petitioner's PCRA proceedings. After Petitioner filed his pro se PCRA petition, the PCRA trial court appointed Attorney Ragin as Petitioner's counsel. After her appointment, Attorney Ragin filed a Turner/Finley no merit letter on or about January 24, 2014. ECF No. 15-1 at 22 – 40. On January 30, 2014, the PCRA trial court then filed its Rule 907 Notice of Intent to Dismiss the PCRA petition based on the Turner/Finley no merit letter. This Rule 907 Notice of Intent gave Petitioner an opportunity to object to the dismissal of the PCRA petition based upon the Turner/Finley letter and in fact, gave Petitioner the opportunity to raise the claim in response to the Rule 907 Notice of Intent, that his PCRA counsel was ineffective for filing the Turner/Finley no-merit letter and gave Petitioner the opportunity to raise the claim that his PCRA trial counsel was ineffective for failing to raise the ineffectiveness of criminal trial counsel for not raising a challenge to the sufficiency of the evidence. Petitioner did not file a response in the Notice of Intent to Dismiss. Rather, he filed a pro se notice of appeal in response to the PCRA trial court's dismissal of his PCRA petition. In response to the pro se notice of appeal, on April 7, 2014, the PCRA trial court appointed new counsel for Petitioner on appeal. We note that on appeal, no claim of Attorney Ragin's alleged ineffectiveness had been raised.

We find that Petitioner's failure to raise the claim that his PCRA trial-level counsel, i.e., Attorney Ragin, was ineffective, for failing to raise the claim of trial counsel's failure to challenge the sufficiency of the evidence, constituted a procedural default of the claim that his PCRA trial level counsel was ineffective. Therefore, any claim of "cause" based upon PCRA trial counsel's ineffectiveness (to excuse the procedural default of the claim of trial counsel's

ineffectiveness for not challenging the sufficiency of the evidence) was also procedurally

defaulted. We rest this finding of procedural default on the clearly independent and adequate

state law of procedure which requires that PCRA petitioners raise any claim of PCRA trial

counsel's ineffectiveness in response to the PCRA trial court's Rule 907 Notice of Intent to

Dismiss, which follows upon the filing of a Turner-Finley no-merit letter by PCRA counsel,

upon pain of waiver under state law. Com. v. Pitts, 981 A.2d 875, 879 (Pa. Oct. 20, 2009).

We will address the rule of Com. v. Pitts at some length herein because the question of

whether the rule of Com. v. Pitts can support a procedural default finding is a question of first

impression for this Court and, seemingly, for the federal courts in Pennsylvania.

In Pitts, the Pennsylvania Supreme Court held definitively for the first time that a PCRA

petitioner alleging the ineffectiveness of PCRA trial-level counsel that files a Turner/Finley no-

merit letter, must, in response to the PCRA trial court's Rule 907 Notice of Intent, file a response

and in that response assert the ineffectiveness of PCRA trial-level counsel or else face waiver of

the claim under state law, which, *inter alia*, prohibited a litigant from raising a claim on appeal

for the first time (i.e., a PCRA petitioner could not wait until the appeal level to raise the claim of

ineffectiveness of PCRA trial level counsel). Specifically, the Pennsylvania Supreme Court held

in Pitts:

> The Commonwealth asserts Pitts waived any issue pertaining to the
> adequacy of PCRA counsel's no-merit letter by failing to raise it during Rule 907's
> 20-day response period. We agree, finding Pitts's failure to challenge PCRA
> counsel's withdrawal upon his receipt of counsel's no-merit letter or within the 20-
> day period telling. Additionally, Pitts's failure to raise the issue before the
> Superior Court on collateral appeal from the denial of his PCRA petition
> precludes consideration of it. *See Commonwealth v. Freeman,* 573 Pa. 532, 827
> A.2d 385, 397 (2003) ("It [is] 'elementary that issues not preserved for appellate
> review or, even if raised at the trial level, not raised by a party to an appeal, will
> not be considered by an appellate court.'") (quoting *Commonwealth v.
> McKenna,* 476 Pa. 428, 383 A.2d 174, 179 (1978))....

19

Pitts, 981 A.2d 879 n.3. See also id. at 880 n.4 ("he could have challenged PCRA counsel's stewardship after receiving counsel's withdrawal letter and the notice of the PCRA court's intent to dismiss his petition pursuant to Pa.R.Crim.P. 907, yet he failed to do so. Thus, the issue of whether PCRA counsel was ineffective for failing to raise the direct appeal issue was waived, and the Superior Court should not have reached it.").

Procedural default will not be found based upon the failure to comply with the state procedural rule unless the state procedural rule is "adequate" and "independent." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state rule of procedure is "adequate" if it is firmly established and applied with some consistency. Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996) ("A state rule is adequate only if it is 'consistently and regularly applied.' *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988); *see also Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural rule must be 'firmly established and regularly followed' to bar federal habeas review).") *abrogated on other grounds by*, Beard v. Kindler, 558 U.S. 53 (2009) (rejecting the holding in Doctor that a discretionary state rule cannot be "adequate" so as to serve as the basis for a procedural default holding in federal court). Moreover, when performing a "firmly established and regularly followed" analysis, federal habeas courts look to the time when the alleged failure by the petitioner to comply with state law occurred to determine if, at that time, the state rule of procedure was firmly established and regularly followed. See Doctor v. Walters, 96 F.3d at 684 ("We must decide whether [the fugitive forfeiture rule] was firmly established and regularly applied, not in 1993 when the [state] Supreme Court relied on it, but rather as of the date of the waiver that allegedly occurred when Doctor escaped in 1986"). A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal

20

constitutional question. <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75 (1985) ("when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law . . . .").

The rule announced in <u>Pitts</u> is clearly independent of any federal law question as it merely asks, did a PCRA petitioner raise the claim of PCRA trial-level counsel's ineffectiveness in response to the PCRA trial court's Rule 907 Notice of Intent? This question clearly does not implicate any federal legal question.

The rule announced is <u>Pitts</u> is also "adequate" especially at the time of the default that Petitioner engaged in here, namely, in or about January 30, 2014 to February 28, 2014, when Petitioner failed to file a response to the PCRA trial court's Rule 907 Notice of Intent to Dismiss. The <u>Pitts</u> rule was first announced on October 30, 2009, more than four years prior to Petitioner's procedural default in January – February 2014. And since the rule in <u>Pitts</u> was announced, we find it to have been applied with sufficient consistency so as to qualify it as an "adequate" rule within the jurisprudence of the procedural default doctrine. <u>See, e.g.</u>, <u>Com. v. Ford</u>, 44 A.3d 1190, 1198 (Pa. Super. 2012) ("when counsel files a Turner/Finley no-merit letter to the PCRA court, a petitioner must allege any claims of ineffectiveness of PCRA counsel in a response to the court's notice of intent to dismiss" and refusing to address a PCRA petitioner's claim raised for the first time in appellate proceedings, i.e., in a Rule 1925(b) statement of errors complained of on appeal, that his PCRA counsel was ineffective); <u>id.</u> at 1195 ("Appellant presents his next issue as a layered claim of ineffectiveness. Appellant asserts that initial PCRA counsel was ineffective in neglecting to raise appellate counsel's effectiveness for filing an Anders brief. In light of recent Pennsylvania Supreme Court pronouncements, we must determine if we are permitted to address the merits of this claim since Appellant raised it for the first time in his

21

1925(b) statement."). See also Com. v. Potter, 2789 EDA 2010, 2013 WL 11275418, at *6 (Pa.

Super. Apr. 1, 2013) ("Since *Pitts*, our Supreme Court and this Court have applied that

prohibition in multiple cases, the most recent of which was this Court's opinion in

*Commonwealth v. Ford*, 44 A.3d 1190 (Pa. Super. 2012), where we expressly held 'that, absent

recognition of a constitutional right to effective collateral review counsel, claims of PCRA

counsel ineffectiveness cannot be raised for the first time *after a notice of appeal has been taken*

*from the underlying PCRA matter.*' *Id.* at 1201 (emphasis added)."). Cf. Collazo v. Curley,

CIV.A. 11-6, 2012 WL 2026830, at *5 (W.D. Pa. June 5, 2012) ("The Court is cognizant that a

petitioner can procedurally default the claim of ineffectiveness that he is relying upon to

establish cause for the default of another claim. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446,

120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). However, this Court cannot conclude that Petitioner

procedurally defaulted his contention that Hathaway was ineffective even though the Superior

Court determined that he waived that claim because he did not present it to the PCRA Court in a

response to the Notice of Intent to Dismiss. That is because in order to do so, this Court would

have to conclude that the state rule that the Superior Court applied to find waiver was 'firmly

established and regularly followed' at the time that the alleged default occurred. It was not.

Petitioner's failure to file a response to the Notice of Intent to Dismiss occurred between around

June 23 and July 22 of 2009. The Pennsylvania Supreme Court did not decide *Commonwealth v.*

*Pitts*, the case upon which the Superior Court relied to find waiver, until approximately three

months later, on October 20, 2009.") (some citations omitted). Contra Dickens v. Ryan, 740 F.3d

1302 (9th Cir. 2014) (en banc) (in effect holding that Martinez overruled Edwards v. Carpenter

sub silentio or by implication).

Accordingly, because the rule announced in Pitts is independent and adequate, we find that Petitioner procedurally defaulted his claim of "cause" (in the form of Attorney Ragin's alleged ineffectiveness for failing to raise trial counsel's alleged ineffectiveness for not challenging the sufficiency of the evidence) so as to excuse his procedural default of the ineffective assistance of trial/appellate counsel for failing to raise a challenge to the sufficiency of the evidence. Therefore, Ground One is procedurally defaulted and Petitioner cannot establish an exception of cause to overcome his procedural default.

### b. Petitioner has not shown a miscarriage of justice.

Furthermore, Petitioner cannot succeed in carrying his heavy burden to invoke the second exception to procedural default of a miscarriage of justice. Petitioner points to no new evidence of his actual innocence and it is hard to imagine the existence of any such evidence in light of the record before this court. Coleman v. Greene, 845 F.3d 73 (3d Cir. 2017).[2]

---

[2] In Coleman v. Greene, the United States Court of Appeals for the Third Circuit explained that

> The fundamental miscarriage of justice exception is narrow. The Supreme Court has applied it "to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' " *McQuiggin*, 133 S.Ct. at 1933 (alteration in original) (quoting *Schlup*, 513 U.S. at 329, 115 S.Ct. 851). Put differently, the exception is only available when a petition presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 1936 (quoting *Schlup*, 513 U.S. at 316, 115 S.Ct. 851). In *Schlup*, the Supreme Court emphasized that "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."

Id. at 76.

Having procedurally defaulted his claim of insufficient evidence, and having failed to carry his burden to overcome the procedural default by establishing a miscarriage of justice, Ground One cannot and does not provide a basis for relief in these federal habeas proceedings.

## B. Ground Two Does Not Merit Relief.

### 1. Ground Two was procedurally defaulted.

In Ground Two, Petitioner claims that his Sixth and Fourteenth Amendment rights were violated when his criminal trial was not severed from that of his co-defendant and they were tried together. ECF No. 3-1 at 2. Respondents point out that this Ground was procedurally defaulted because although Petitioner raised such a claim in state court, he only raised the issue as one of state law and not of federal constitutional law. ECF No. 13 at 22 ("Second, petitioner claims that his due process rights under the 6th and 14th Amendments were violated, because his case was not severed from his co-defendant. This claim was not presented as a federal claim.").

We agree with Respondents that Petitioner never presented this claim as one resting on the federal constitutional grounds as opposed to resting on the Pennsylvania Rules of Criminal Procedure. See, e.g., Petitioner's Memorandum in Support of the Motion to Sever, ECF No. 14-1 at 27 - 29 (citing only Pennsylvania state law and state cases and noting that "In Pennsylvania, the decision whether to grant a motion for severance is within the discretion of the trial court and subject to a manifest abuse of discretion"). Furthermore, Petitioner does not argue that he did indeed present this claim as one of federal law but argues instead merely that "[t]he fact that the specific words, 'my 6th and 14th Amendment rights' were not used can never justify a violation of them." ECF No. 19 at 3. It may not justify a putative violation of his rights but it clearly can justify a denial of federal habeas relief where federal claims were never fairly presented to the state courts. Duncan v. Henry, 513 U.S. 364, 365–66 (1995) ("If state courts are to be given the

opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

Petitioner appears to argue that this "issue" of severance (without specifying whether the "issue" was ever presented to the state courts as a "federal issue" as opposed to merely a state law "issue") was the responsibility of his lawyers to present as an issue of federal law. Specifically, Petitioner argues that "the use of words such as those [i.e., the Sixth and Fourteenth Amendments] would be the responsibility of my attorney, who filed those briefs. I had no idea that such an iota of the law would nullify my rights." ECF No. 19 at 3. We take this to be Petitioner's assertion of a claim of ineffective assistance of counsel for failing to raise this issue of severance as one of federal law and thus, an attempt to claim cause for the excuse of the procedural default of this federal law claim that Petitioner's Sixth and Fourteenth Amendment rights were violated by the denial of his motion to sever.

Because we agree with Respondents that the substantive claim that his federal rights were violated by the denial of his motion for severance was never presented to the state courts as a claimed violation of federal law, we deem Petitioner herein to be making a claim that his trial counsel was ineffective for failing to raise this claim specifically as one constituting a violation of federal constitutional law. However again, it is clear that Petitioner never raised this claim of trial counsel's ineffectiveness for failing to specifically raise a federal claim with respect to severance. Having never raised the claim that his trial and direct appeal counsel were ineffective for failing to raise the severance claim as anything other than a state law claim, this specific

25

claim of trial and direct appeal counsel's alleged ineffectiveness was also procedurally defaulted.

Furthermore, Petitioner cannot claim "cause" under Martinez to excuse the procedural default of this claim of trial counsel's ineffectiveness for the very same reasons that Petitioner could not do so with respect to Ground One. Specifically, Petitioner procedurally defaulted any claim of PCRA trial-level counsel's ineffectiveness for not raising trial counsel's ineffectiveness regarding severance as a federal claim, by Petitioner's failure to raise PCRA counsel's alleged ineffectiveness in a response to the Rule 907 Notice of Intent. Therefore, Petitioner procedurally defaulted any claim of cause to excuse his default of the claim that trial counsel was ineffective for not raising severance as one invoking his federal constitutional rights.

## 2. Ground Two is meritless under the AEDPA.

In the alternative, even if Petitioner could be said to have somehow raised a federal constitutional claim in the state courts with respect to severance of his trial, and assuming that the state courts' analysis of the state law claim of severance under Pa. R. Crim. P. 583, Com. v. Brunner, 2013 WL 11289521, at *4 ("Appellant cannot demonstrate prejudice when he would have been faced with the same evidence in a separate trial"), is sufficiently similar to a federal constitutional analysis of the Sixth and Fourteenth Amendments concerning severance, Johnson v. Williams, 568 U.S. 289 (2013),[3] Petitioner fails to carry his burden to show that the state

---

[3] "Regardless of whether a California court would consider Williams' § 1089 [i.e., a state law claim] and Sixth Amendment claims to be perfectly coextensive, the fact that these claims are so similar makes it unlikely that the California Court of Appeal decided one while overlooking the other." Johnson v. Williams, 568 U.S. at 305. In point of fact, we find Johnson v. Williams distinguishable from the facts of this case. In Johnson, the Petitioner clearly raised a federal legal claim, whereas here, Petitioner seemingly only ever raised a request for severance as a matter of state law. At least, Petitioner fails to show where in the record he raised severance as a federal legal issue.

courts' analysis of lack of prejudice from the denial of severance was contrary to or an

unreasonable application of United States Supreme Court precedent concerning severance.

Essence v. Wenerowicz, CIV.A. 11-6848, 2012 WL 2793347, at *5 (E.D. Pa. June 4, 2012),

*report and recommendation adopted*, CIV.A. 11-6848, 2012 WL 2834600 (E.D. Pa. July 9,

2012).[4]

Accordingly, whether Ground Two is procedurally defaulted or analyzed under the

deferential standards of AEDPA, Ground Two fails to provide Petitioner a basis for federal

habeas relief.

### C. Ground Three is Procedurally Defaulted.

In Ground Three, Petitioner complains that there was a "key police report" which the

District Attorney inadvertently did not produce in discovery. Petitioner complains that his Sixth

---

[4] In Essence, the United States District Court for the Eastern District of Pennsylvania noted that:

> The United States Supreme Court has explained that "[i]mproper joinder does not, by itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane,* 474 U.S. 438, 446 n. 8, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). "[A] criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." *Cummings v. Evans,* 161 F.3d 610, 619 (10th Cir. 1998). *See also Jenner v. Class,* 79 F.3d 736, 741 (8th Cir. 1996) (holding that habeas relief based on the trial court's failure to grant severance is only appropriate where petitioner "can establish that the failure to grant severance rendered his trial fundamentally unfair"); *Lewis v. Huch,* 964 F.2d 670, 676 (7th Cir. 1992) (failure to sever will only warrant habeas relief where the trial court's refusal to grant severance was an abuse of the trial court's discretion and that this abuse resulted in a trial that was fundamentally unfair).

Id., 2012 WL 2793347, at *5. Indeed, given the testimony of Brunner's girlfriend, which definitely implicated Brunner, and which, no doubt would have been presented at a hypothetical severed trial, Petitioner herein simply cannot show prejudice from the joint trial.

and Fourteenth Amendment rights were violated when the District Attorney failed to provide this police report to the defense. As described by the Petitioner, this police report concerned "an attempt at contacting a witness to the event that led to a charge of kidnapping" specifically a witness known as "Subaru Dave." ECF No. 3-1 at 3.

Respondents point out that Petitioner procedurally defaulted this claim because it was never presented to the state courts. In his Traverse, Petitioner does not contest this fact, even though he says he had requested his trial attorney to raise this issue but his trial attorney declined to do so. ECF No. 19 at 3 – 4 (citing ECF No. 15-1 at 21 (letter from Attorney Brennan to Petitioner date 10/11/2010)). Accordingly, for the same reasons that Petitioner's Ground One was procedurally defaulted, i.e., for never having been presented to the state courts, Petitioner's Ground Three is likewise procedurally defaulted. Furthermore, Petitioner has no cause to excuse such a default of the claim for the same reasons he had no cause for excusing the procedural default of Ground One. Nor does he point to any new evidence of his actual innocence.

Accordingly, Ground Three does not afford Petitioner relief in these federal habeas proceedings.

## III. CERTIFICATE OF APPEALABILITY

Where "the district court denies relief on procedural grounds, the petitioner seeking a COA [i.e., a certificate of appealability] must show both 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Gonzalez v. Thaler, 565 U.S. 134, 140–41 (2012) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Here, Petitioner did not make a substantial showing of the denial of a constitutional right, nor that jurists of reason would find it debatable whether the Petition stated a

valid claim of the denial of a constitutional right. Therefore, we decline to issue a certificate of appealability.

**IV. CONCLUSION**

For the reasons set forth herein, the Petition is denied. Because we find jurists of reason would not find the foregoing debatable, a certificate of appealability is denied.

Date: April 5, 2019

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: TIMOTHY BRUNNER
MM-6688
S.C.I. Albion
10745 Route 18
Albion, PA 16475

All counsel of record via CM-ECF